**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| AIR VENT, INC., | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. |
| | § | |
| POWERMAX ELECTRIC CO., LTD., | § | |
| GUANGDONG, DM (ASIA) LIMITED | § | |
| and KING OF FANS, INC., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff files this Original Complaint against Defendants and would respectfully show as follows:

**PARTIES**

1. Plaintiff Air Vent, Inc. ("AVI") is a Delaware corporation with its principal place of business located at 4117 Pinnacle Point Drive, Suite 400, Dallas, Texas 75211.

2. Defendant Powermax Electric Co., Ltd, Guangdong ("Powermax") is a foreign corporation based in China that designed, manufactured and/or otherwise placed the subject fan motor in the stream of commerce and purposefully availed itself of the rights and benefits of the State of Texas so that it would be reasonably foreseeable that it would be subject to the laws of the State of Texas relating to this product. Powermax's principal place of business is located at 1-2 Region, South of Quibao Industries, Xinhui District, Jiangmen City, Guangdong, China 529100.

3. Defendant DM (Asia) Limited ("DMA") is a foreign corporation based in China that designed, manufactured and/or otherwise placed the subject fan motor in the stream of commerce and purposefully availed itself of the rights and benefits of the State of Texas so that it would be reasonably foreseeable that it would be subject to the laws of the State of Texas relating

to this product. DMA's principal place of business is located at Suite B, 5/F, Kiu Fu Commercial Building, No. 300 Lockhart Road, Wanchai, Hong Kong, China.

4. Defendant King of Fans, Inc. ("KOF") is a Florida corporation with its principal place of business located at 1951 N.W. 22nd Street, Fort Lauderdale, Florida 33311. KOF may be served at that address.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in that it is an action between citizens of different states and the amount in controversy exceeds $75,000.

6. This Court has personal jurisdiction over the Defendants because Plaintiff's claims arise from the Defendants:

- transacting business in the State of Texas;
- contracting to supply goods in the State of Texas; and/or
- causing tortious injury by an act or omission in the State of Texas.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

**FACTS COMMON TO ALL CAUSES OF ACTION**

8. AVI is a manufacturer and seller of attic ventilation products. Some of the products sold by AVI include powered attic ventilation fans. All powered attic ventilation fans sold by AVI include completed fan motors manufactured by third parties. Third-party motor manufacturers design, manufacture and sell their motors to AVI as completed units. All fan motors included in AVI fans are purchased by AVI as completely assembled, ready to install units.

9. AVI does not manufacture any motorized, energized or powered component in its fan assemblies that are capable of failing or manufacturing in a way that could possibly be an ignition source for, or the cause of, a fire.

10. AVI completed products were and are approved by Underwriters Laboratories ("UL") and comply with all UL safety standards.

11. In February 2018, The Travelers Indemnity Company filed suit against AVI in state court in Ohio (the "Southington Suit") alleging that AVI designed, formulated, produced, made, constructed and assembled a Power Cool Plus 15 Power Adding Ventilator (the "AVI Attic Fan") that was installed at the Southington Local School District's Middle School in Southington, Ohio. The Complaint further alleged that on June 30, 2016, a fire occurred at the Middle School that caused significant damage to the school and its contents. The Complaint alleged that the fire originated in, and was caused by a defect in, the AVI Attic Fan. According to the Complaint, the fire caused property damage in excess of $725,000. A true and correct copy of the Southington Complaint is attached hereto as Exhibit A and incorporated by reference herein. AVI gave Defendants herein reasonable notice of the Southington Suit.

12. AVI answered the Southington Suit and denied all liability. After participating in extensive litigation and incurring substantial costs and legal fees, AVI settled the Southington Suit for $297,500. As part of the settlement, AVI obtained releases on behalf of the Defendants herein. This suit has been filed to seek contribution and indemnity for the damages caused to AVI in defending and settling the Southington Suit.

13. AVI did not design or participate in the design of the attic fan motor (the "Fan Motor") that was alleged to have caused the fire that was the basis of the Southington Suit. Rather, the Fan Motor was manufactured by Powermax/KOF and was sold to AVI by Powermax/KOF

and/or DMA and then shipped directly from Powermax to AVI in Dallas, Texas for incorporation into the AVI Attic Fan. AVI did not in any way change, modify, or alter the Fan Motor. AVI installed the Fan Motor at issue into its fan housing in good and workmanlike manner by attaching the motor to the housing.

## CAUSES OF ACTION

### First Cause of Action: Statutory Indemnity

14. AVI incorporates the allegations of paragraphs 1 through 13 above as if fully set forth herein.

15. Pursuant to Chapter 82, *et. seq.* of the Texas Civil Practice and Remedies Code, Powermax/KOF and DMA are "manufacturers" of the Fan Motor that is alleged to be defective. AVI was and is an innocent Seller of the Fan Motor. As such, Powermax/KOF and DMA have an independent duty to indemnify and hold harmless AVI from and against the claims asserted in the Southington Suit. Under Chapter 82, Defendants are liable to AVI for its court costs, reasonable expenses, reasonable attorney's fees and reasonable damages in defending the Southington Suit, including the payment of the amount necessary to resolve the claims brought therein. AVI hereby sues Defendants for these amounts as well as all attorneys' fees and costs of court incurred in prosecuting this suit as well as pre-judgment and post-judgment interest at the applicable rate.

### Second Cause of Action: Contractual Indemnity

16. AVI incorporates the allegations of paragraphs 1 through 13 above as if fully set forth herein.

17. All fan motors purchased by AVI from Powermax/KOF through DMA, including the subject Fan Motor, were purchased through the issuance of formal Purchase Orders ("PO's") which contained Purchase Order Terms and Conditions ("POTC") that were included with and made a part of each Purchase Order. Each shipment of motors AVI received from DMA was

accompanied by DMA's "confirmations" which referenced the separately numbered PO's with the POTC attached.

18. Pursuant to the Uniform Commercial Code ("UCC"), the POTC are a binding and enforceable part of the transaction between AVI and Powermax/KOF and DMA. The Purchase Order Terms and Conditions state, in part:

> 12. INDEMNIFICATION. To the fullest extent permitted by law, Seller agrees to indemnify, defend, and hold harmless Buyer, its affiliates, and their respective directors, officers, employees and agents (the "Indemnified Parties") from and against all claims, demands, causes of action, losses, costs and expenses (including without limitation reasonable attorneys' fees and costs of defense) (collectively, "Losses") arising out of or incident to Seller's performance hereunder, or the presence of Seller, its employees, agents or invitees ("Seller Parties") on Buyer's premises, provided that such Losses are attributable to (a) the negligence or willful misconduct of the Seller Parties, (b) the failure of the Seller Parties to comply with applicable laws, or (c) bodily injury, sickness, disease or death (including but not limited to bodily injury, sickness, disease or death of the employees of Seller or Buyer), or to damage to or destruction of tangible property (including the loss of use thereof); in each case regardless of whether or not caused in part by the negligence or other fault of any Indemnified Party hereunder; provided that Seller shall not be liable for Losses caused by the sole negligence or willful misconduct of any Indemnified Party.

19. Also, pursuant to the Purchase Order Terms and Conditions, Powermax/KOF and DMA provided certain express warranties:

> 9. Seller's Warranties. Seller expressly warrants that for a period of one year after Buyer's acceptance of the goods or services hereunder, or for such longer period as may be expressly provided in this Purchase Order or under applicable law, all goods and services covered by this Purchase Order will: (a) strictly conform to Seller's specifications, drawings, samples and other written materials and descriptions, or, to the extent the goods were purchased to Buyer's specifications and drawings as set forth or referred to in this Purchase Order, that the goods strictly conform with those specifications and drawings; (b) be free from defects in design, material and workmanship; (c) be of merchantable quality and suitable for the particular purposes intended, whether express or

> reasonably implied; and (d) bear all warnings, labels, and markings required by applicable laws and regulations. In addition, Seller warrants that: (e) none of the goods covered hereby, to the extent they are subject to laws prohibiting adulteration or misbranding, is adulterated or misbranded within the meaning of such laws as of the date of delivery to Buyer; (f) all goods covered hereby may be introduced into interstate commerce without violation of applicable laws and regulations; (g) all services have been performed in a good and workmanlike manner; and (h) all goods and services furnished or rendered pursuant to this Purchase Order have been produced, sold, delivered or rendered to Buyer in compliance with all applicable laws and regulations, including those set forth in Section 14

20. Powermax/KOF and DMA are obligated to defend and indemnify AVI pursuant to the POTC. Defendants are liable to AVI for its court costs, reasonable expenses, reasonable attorney's fees and reasonable damages in defending the Southington Suit, including the payment of the amount necessary to resolve the claims brought therein. AVI hereby sues Defendants for these amounts as well as all attorneys' fees and costs of court incurred in prosecuting this suit and all applicable pre-judgment and post-judgment interest at the applicable rate.

**Third Cause of Action: Common Law Indemnity**

21. AVI incorporates the allegations of paragraphs 1 through 13 above as if fully set forth herein.

22. Pursuant to Texas law, a party who may bear liability to a third person arising only out of passive actions by the party may seek indemnification from an active tortfeasor. Under the present facts, AVI's liability in the Southington Suit arose only as the passive statutory seller of the Fan Motor which was incorporated, without modification, into the AVI Attic Fan. Under Texas law, the active party at fault (Powermax/KOF and DMA) must indemnify AVI, as it was an innocent retailer/seller of the component part that allegedly caused harm to the Plaintiff in the Southington Suit.

23. Defendants are liable to AVI under Texas common law for AVI's court costs, reasonable expenses, reasonable attorney's fees and reasonable damages in defending the Southington Suit, including the payment of the amount necessary to resolve the claims brought therein. AVI hereby sues Defendants for these amounts as well as all attorneys' fees and costs of court incurred in prosecuting this suit and all applicable pre-judgment and post-judgment interest at the applicable rate.

**Fourth Cause of Action: Breach of Contract**

24. AVI incorporates the allegations of paragraphs 1 through 13 above as if fully set forth herein.

25. The PO's, POTC and PO confirmations between and among AVI and DMA, as the agent, representative and joint venturer with Powermax/KOF, created valid contracts for the sale of goods. Upon information and belief, the Powermax/KOF Fan Motor manufactured and shipped by Powermax, which was incorporated without modification into the AVI Attic Fan, was defective and not in compliance with the contractual obligations owed to AVI by Powermax/KOF and DMA. Under the present facts, Powermax/KOF and DMA have breached their contractual obligations to AVI, causing damage to AVI.

26. Defendants are liable to AVI for AVI's court costs, reasonable expenses, reasonable attorney's fees and reasonable damages in defending the Southington Suit, including the payment of the amount necessary to resolve the claims brought therein. AVI hereby sues Defendants for these amounts as well as all attorneys' fees and costs of court incurred in prosecuting this suit and all applicable pre-judgment and post-judgment interest at the applicable rate.

**Fifth Cause of Action: Breach of Implied Warranty**

27. AVI incorporates the allegations of paragraphs 1 through 13 above as if fully set forth herein.

28. Powermax/KOF/DMA are sellers of goods and are known to be manufacturers and sellers of fan motors within the industry. The fan motors manufactured by Powermax/KOF/DMA and sold to AVI constitute goods as defined and contemplated in the Uniform Commercial Code.

29. Pursuant to Texas law, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Upon information and belief, the Fan Motor manufactured and shipped by Powermax/KOF/DMA, which was incorporated without modification into AVI Attic Fan, was defective and not of merchantable quality. As a result of these defects and breaches of warranty, AVI has suffered actual damage.

30. Defendants are liable to AVI for AVI's court costs, reasonable expenses, reasonable attorney's fees and reasonable damages in defending the Southington Suit, including the payment of the amount necessary to resolve the claims brought therein. AVI hereby sues Defendants for these amounts as well as all attorneys' fees and costs of court incurred in prosecuting this suit and all applicable pre-judgment and post-judgment interest at the applicable rate.

**Sixth Cause of Action: Negligence and Strict Liability**

31. AVI incorporates the allegations of paragraphs 1 through 13 above as if fully set forth herein.

32. Powermax/KOF designed, manufactured, and sold the subject fan motor through DMA to AVI. Upon information and belief, the Powermax/KOF Fan Motor manufactured and shipped by DMA, which was incorporated without modification into the AVI Attic Fan, was

defective. Upon information and belief, the defective Fan Motor caused the fire that was the subject of the Southington Suit.

33. Powermax/KOF and DMA are strictly liable to AVI for the damages caused by the defective Fan Motor, the resulting fire and the subsequent Southington Suit.

34. Because Powermax/KOF designed, manufactured, and sold the fan motor to AVI through DMA, Powermax/KOF and DMA are liable for the negligent sale, distribution, supply or provision of a defective product which directly and proximately caused injury, harm, and/or damage to AVI. Defendants are also liable to AVI because they negligently failed to take all steps reasonably necessary to prevent harm and/or damage from occurring to AVI. Defendants are liable for negligently selling, distributing, supplying or otherwise providing a defective product to AVI.

35. As a result of their strict liability and negligence, Defendants are liable to AVI for AVI's court costs, reasonable expenses, reasonable attorney's fees and reasonable damages in defending the Southington Suit, including the payment of the amount necessary to resolve the claims brought therein. AVI hereby sues Defendants for these amounts as well as all attorneys' fees and costs of court incurred in prosecuting this suit and all applicable pre-judgment and post-judgment interest at the applicable rate.

**Seventh Cause of Action: Contribution under Ohio law (in the alternative)**

36. AVI incorporates the allegations of paragraphs 1 through 13 above as if fully set forth herein.

37. In the alternative, AVI seeks contribution under Ohio law against Defendants. As asset forth above, AVI settled the Southington Suit for more than its proportionate share of the common liability, if any, between AVI and Defendants. The settlement included a release of liability in favor of Defendants. Under ORC Ann. 2307.25, AVI seeks contribution for AVI's

payment to settle the Southington Suit as well as AVI's court costs, reasonable expenses and reasonable attorney's fees. AVI hereby sues Defendants for these amounts as well as all attorneys' fees and costs of court incurred in prosecuting this suit and all applicable pre-judgment and post-judgment interest at the applicable rate.

## JOINT AND SEVERAL LIABILITY OF ALL DEFENDANTS

### Joint Venture

38. AVI incorporates the allegations of paragraphs 1 through 13 above as if fully set forth herein.

39. AVI purchased attic ventilation fan motors from China from about 2003 up through 2012. All motors AVI purchased from China were manufactured by Powermax/KOF and were marketed and sold to AVI by Powermax and/or DMA, the marketing division for Powermax/KOF. Powermax is and was at all relevant times owned by KOF, which is the U.S. entity thru which Powermax/KOF sells many if not all of its fan motors and finished household fan products. In all, AVI estimates that it purchased 2.8 million Powermax/KOF motors which were included in attic ventilation fans sold through various retailers throughout the United States. All of the motors, including the Fan Motor at issue herein, were shipped directly to AVI in Dallas, Texas for incorporation into its attic vent fans to be sold throughout the United States.

40. As demonstrated in part by the facts below, Powermax, KOF and DMA jointly engaged in the design, manufacture, marketing, sale and distribution of attic ventilation fan motors (including the subject Fan Motor) which were sold to various attic ventilation fan manufacturers, including, but not limited to, AVI. Some of those facts are as follows:

(a) DMA sold fan motors to AVI on behalf of Powermax and shipped those motors directly from the Powermax manufacturing facility to AVI in Dallas, Texas.

(b) Powermax/KOF sold fan motors to AVI and shipped those motors directly from the Powermax manufacturing facility to AVI in Dallas, Texas.

(c) AVI representatives attended a meeting in China where they toured DMA/Powermax/KOF facilities, where they were shown products manufactured at Powermax.

(d) Powermax is listed as the manufacturing facility on the DMA approval documents for fan motor manufacturing from Underwriters Laboratory.

(e) KOF has owned Powermax and the Powermax trademark since 2002 and registered the Powermax trademark as the owner of Powermax in 2005.

(f) KOF currently owns the Powermax trademark and re-registered the Powermax trademark as the owner of Powermax in 2015.

(g) KOF representatives have attended fire claim inspections in the past involving Powermax motors.

(h) DMA and Powermax have the same employees and officers, and upon information and belief, some of those employees and/or officers are the same for KOF.

(i) Powermax and KOF have the same customer service number and the same employees troubleshooting issues for customers who have purchased Powermax fans.

(j) Powermax's website references the KOF "1-800" number.

(k) Powermax confirms on its website that it is a joint venture with a U.S. company.

(l) Powermax and KOF have identical household fan product photos on their website, which show photos of fans manufactured at the Powermax/KOF facility in China.

(m) The D&B report on Powermax confirms that 99% of its products are sold into the United States thru The Home Depot, Lowe's, Grainger, Harbor Freight and Wal-Mart.

(n) KOF is owned by Chien Luen Industries Co., Ltd., Inc. which has the same address in China as key employees and/or officers for Powermax.

41. Each of the foregoing facts demonstrate that KOF, Powermax and DMA have and have had an express or implied agreement to engage in a joint venture, a community of interest in the venture, an agreement to share profits and losses from the enterprise and a mutual right of control or management of the enterprise. KOF, Powermax and DMA had a common business and

pecuniary interest with regard to the design, manufacturing, marketing, selling and distributing of Powermax/KOF manufactured products into the United States, including the attic ventilation fan motors sold to AVI, one of which is the subject of this litigation. As a result, KOF, Powermax and DMA are jointly and severally liable for AVI's damages under a joint venture theory.

## Joint Enterprise

42. AVI incorporates the allegations of paragraphs 1 through 13 above as if fully set forth herein.

43. As more fully shown herein, Powermax, KOF and DMA were engaged in a joint enterprise to design, manufacture, market and sell fan motors into the United States, including the Fan Motor at issue, because they had:

(a) an express or implied agreement;

(b) a common purpose to be carried out by the enterprise;

(c) a community of pecuniary interest in that common purpose; and

(d) an equal right to direct and control the enterprise.

As a result, KOF, Powermax and DMA are jointly and severally liable for AVI's damages under a joint enterprise theory

## Agency

44. AVI incorporates the allegations of paragraphs 1 through 13 above as if fully set forth herein.

45. As more fully shown herein, Powermax, KOF and DMA were each acting as the agent for one another, both actual and apparent. Each of them were engaged in a consensual relationship whereby each of them were obliged to act on behalf of the other and subject to the

other's control. As a result, KOF, Powermax and DMA are jointly and severally liable for AVI's damages under an agency theory

**Alter Ego**

46. AVI incorporates the allegations of paragraphs 1 through 13 above as if fully set forth herein.

47. As more fully shown herein, Powermax, KOF and DMA were organized and operated as a mere tool or business conduit of one another and/or their owners. There was some financial interest, ownership or control by and among Powermax, KOF and DMA. There was such a unity of interest among them that the separateness of the entities was ignored by each of them and ceased to exist. Holding only some of the Defendants liable would result in an injustice. Powermax, KOF and DMA are, in substance, one and the same, are the alter egos of each other and are being used as a device to cause or harm or prejudice to those with whom they do business. As a result, KOF, Powermax and DMA are jointly and severally liable for AVI's damages under an alter ego theory.

**Single Business Enterprise**

48. AVI incorporates the allegations of paragraphs 1 through 13 above as if fully set forth herein.

49. KOF, Powermax and DMA were not operated as separate business entities but were integrated to achieve a common business purpose. These entities were operated as a single business enterprise because:

(a) They have common employees;

(b) They have common offices;

(c) They have centralized accounting;

(d) They pay wages of each other's employees;

(e) They render services on behalf of each other.

As a result, KOF, Powermax and DMA are jointly and severally liable for AVI's damages under a single business enterprise theory.

**Respondeat Superior and Master/Servant**

50. AVI incorporates the allegations of paragraphs 1 through 13 above as if fully set forth herein.

51. KOF, Powermax and DMA were engaged in a master/servant relationship. One or more of them had the right to control the details of the work performed by the other(s). The acts taken by each of them were in the course and scope of their relationship. As a result, KOF, Powermax and DMA are jointly and severally liable for AVI's damages under the doctrine of respondeat superior.

**DAMAGES**

52. As a direct and proximate result of Defendants' acts and omissions, AVI has suffered damages including:

- The amount paid to settle the Southington Suit;
- Attorneys' fees, costs and expenses incurred in defending the Southington Suit; and
- Attorneys' fees, costs and expenses incurred in prosecuting the instant suit.

AVI seeks an award of these damages as well as pre-judgment and post-judgment interest at the applicable rate.

**CONDITIONS PRECEDENT**

53. All conditions precedent to AVI's recovery for the causes of action stated herein have occurred, have been performed or have been excused.

## JURY DEMAND

54. AVI hereby requests a trial by jury.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff AVI prays that Defendants be cited to answer and appear and that, following a trial by jury, they be awarded the following:

a. Judgment against Defendants for the actual damages sought above;

b. Attorneys' fees;

c. Court costs;

d. Pre- and post-judgment interest; and

e. All other relief to which it is justly entitled.

Respectfully submitted,

*/s/ Eric D. Pearson*

Eric D. Pearson
State Bar No. 15690472
eric@hop-law.com
**HEYGOOD, ORR & PEARSON**
6363 N. State Highway 161
Suite 450
Irving, Texas 75038
(214) 237-9001 Telephone
(214) 237-9002 Facsimile

**ATTORNEYS FOR PLAINTIFF**