UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AIR VENT, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-0229-X |
| | § | |
| POWERMAX ELECTRIC CO., LTD, | § | |
| GUANDONG, and DM (ASIA) | § | |
| LIMITED, | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION**

Pending before the Court is Defendant Powermax Electrical Co., Ltd.,
Guandong's ("Powermax") motion to dismiss for lack of personal jurisdiction.
(Doc. 32). After reviewing the motion, response, reply, and applicable law, the Court
**DENIES** Powermax's motion. (Doc. 32).

## I. Background

This is a products-liability case involving a Chinese manufacturer, Chinese
distributor, and a Texas business. Air Vent manufacturers and sells powered attic
ventilation products.[1] But Air Vent does not make every individual component of its
powered attic ventilation products.[2] For instance, Air Vent does not make the fan

---

[1] Doc. 1 at 2.

[2] *Id.*

1

motors that power their attic ventilation products.[3]  Third parties do—that is, third parties manufacture, design, and sell fully completed fan motors to Air Vent.[4]

In this case, defendant Powermax, a Chinese company, allegedly designed and manufactured the fully completed fan motors in Air Vent's powered attic ventilation fans.[5]  Powermax then allegedly sold its fan motors to another Chinese company, DM (Asia) Limited—a distributor—who then sells the fan motors directly to Air Vent, a Texas company.[6]

One of those fans allegedly malfunctioned, but not in Texas.[7]  In 2016, a fire occurred at a middle school in Ohio causing significant damage.[8]  Two years later, a non-party to this suit sued Air Vent (the plaintiff in this case) in Ohio state court alleging that the fire was caused by the fan motor contained within an Air Vent powered fan.[9]  Air Vent denied all liability in the Ohio state-court suit, settled, and obtained releases from the defendants in this case as part of the settlement.[10]

Air Vent brought suit against Powermax, DM (Asia) Limited, and King of Fans in this Court,[11] seeking expenses that Air Vent incurred while litigating in Ohio.[12]

---

[3] *Id.*

[4] *Id.*

[5] *Id.* at 3–4.

[6] *Id.*

[7] *Id.* at 3.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] Air Vent's claims against King of Fans have been dismissed.  (Doc. 91).

[12] *Id.* In total, Air Vent asserts seven causes of action: (1) statutory indemnity under Chapter 82 of the Texas Civil Practices and Remedies Code, (2) contractual indemnity, (3) common-law

Powermax filed a motion to dismiss, (Doc 32), arguing that the Court lacks personal jurisdiction over it.  The Court ordered additional jurisdictional-related discovery and supplemental briefing to determine Powermax's contacts with Texas.[13] Jurisdictional discovery has now finished, and Powermax's motion is ripe for review.[14]

## II. Legal Standard

"A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution."[15]  Texas's long-arm statute confers jurisdiction to the same extent that the federal Constitution's Due Process Clause does, so this two-step framework collapses into one.[16]  As a general matter, "[t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgment of a forum with which he has

---

indemnity, (4) breach of contract, (5) breach of implied warranty, (6) negligence and strict liability, and (7) contribution under Ohio law.

[13] *See* Doc. 53.

[14] When the Court stayed this case pending jurisdictional discovery, the Court also denied without prejudice Powermax's motion to dismiss.  (Doc. 53).  Now that jurisdictional discovery is complete, the Court reconsiders its prior dismissal without prejudice of the motion to dismiss for lack of jurisdiction, (Doc. 32), in order to reach the now-ripe merits of the motion.

[15] *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013).

[16] *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008).

established no meaningful contacts, ties, or relations."[17] A defendant's connection to the forum may be "general or specific."[18]  Here, Air Vent alleges specific jurisdiction.

The Fifth Circuit employs a three-step personal-jurisdiction analysis to determine if there is specific jurisdiction:

> Where the plaintiff alleges specific jurisdiction, as here, due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable.[19]

"When, as here, the [Court] conduct[s] no evidentiary hearing, the party seeking to assert jurisdiction must present sufficient facts as to make out only a prima facie case supporting jurisdiction."[20]   The Court "must accept as true that party's uncontroverted allegations, and resolve in its favor all conflicts between the facts contained in the parties' affidavits and other documentation."[21]

### III. Analysis

The sole ripe motion in this case is Powermax's motion to dismiss for lack of personal jurisdiction.  (Doc. 32).  In analyzing the motion, the Court will review each of the Fifth Circuit's three prongs individually to determine if Powermax can be haled into this Court.

### A.  Purposeful Availment

---

[17] *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012).

[18] *Id.*

[19] *Ainsworth*, 716 F.3d at 177.

[20] *Alpine View*, 205 F.3d at 215.

[21] *Id.*

The parties dispute the first prong of the specific-jurisdiction analysis: whether Powermax purposefully availed itself with its Texas contacts. Powermax argues that it did not purposefully avail itself towards Texas because Powermax sold its attic ventilation fans to a Chinese distributor who then directed the fans towards the United States as a whole without Powermax's knowledge.[22] In response, Air Vent argues that Powermax purposefully availed itself of a Texas forum because Powermax knew its distributor had plans to distribute its fan motors in the United States as a whole[23] and Texas specifically.[24] The Court agrees with Air Vent.

"In cases involving a product sold or manufactured by a foreign defendant, [the Fifth] Circuit has consistently followed a 'stream-of-commerce' approach to personal jurisdiction."[25] Under the stream-of-commerce approach, the purposeful availment prong "is met so long as the court finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state."[26] Notably, under this standard, "mere foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce."[27] As a matter of numerosity, "the defendant's contacts must

---

[22] Doc. 88 at 4.

[23] Doc. 87 at 13–14.

[24] *Id.* at 14–20.

[25] *Ainsworth*, 716 F.3d at 177.

[26] *Id.*

[27] *Id.*

be more than random, fortuitous, or attenuated, or of the unilateral activity of another party or third person."[28]

Here, the jurisdictional discovery conclusively shows that Powermax "delivered the [fans] into the stream of commerce with the expectation that it would be purchased by or used by consumers in" Texas.[29]  In jurisdictional discovery, Powermax produced dozens of purchase orders and invoices which expressly list Dallas, Texas, as "destination" and "port of discharge" for the fans:[30]



And these purchase orders amass more than a mere "random, fortuitous, or attenuated" connection to the Texas.  Far from it in fact.  Powermax's purchase orders indicate that Powermax specifically directed 1.8 million fan motors totaling $13

---

[28] *Id.* (cleaned up).

[29] *Id.*

[30] Doc. 87 at 16.

million to Dallas, Texas.[31]  Thus, due to Powermax's placement of 1.8 million motors into the stream of commerce knowing that they would be delivered to Dallas, Texas, the Court concludes that Air Vent has satisfied the prong of the personal-jurisdiction analysis.

### B. Nexus Between the Causes of Action and the Contacts

The parties dispute the second prong of the specific-jurisdiction analysis: whether Air Vent's causes of action arise out of Powermax's contacts to Texas. Powermax argues that Air Vent's causes of action are unrelated to Powermax's sale of fans because "Powermax did not sell the electric motor equipped in the Attic Ventilation Fan that is the subject of the underlying lawsuit *directly* to any individuals or entities in the State of Texas."[32]  In response, Air Vent argues that its causes of action are related to Powermax's sale of these fans to Texas because Powermax used DM (Asia) as its exclusive distributor for attic fan motors and Powermax and DM (Asia)'s "entire relationship" is "centered" in Dallas, as shown by the $13 million dollars in purchase orders between Powermax and DM (Asia) where Dallas, Texas, is listed as the port of discharge.[33]

The Court agrees with Air Vent.

"The second prong of the Due Process specific-jurisdiction test asks if 'the litigation results from alleged injuries that arise out of or relate to those activities.'"[34]

---

[31] Doc. 87-1 at 46–48; *id.* at 69–147.

[32] Doc. 33 at 20 (emphasis added).

[33] Doc. 87 at 26–28.

[34] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 543 (5th Cir. 2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Powermax's claims do.  In its complaint, Air Vent alleges that the following seven causes of action—(1) statutory indemnity, (2) contractual indemnity, (3) common-law indemnity, (4) breach of contract, (5) breach of implied warranty, (6) negligence and strict liability, and (7) contribution under Ohio law—arise from the Powermax's contacts to Texas because the fan motor at the center of the dispute "was manufactured by Powermax[] and was sold to [Air Vent] by Powermax[] and/or DMA and then shipped directly from Powermax to Air Vent in Dallas, Texas."[35]

The Court will analyze all of Air Vent's claims except for its contribution claim together at once.  As an initial matter, the Court finds Judge Boyle's opinion in a related case, *Air Vent, Inc. v. Powermax Elec. Co., LTD,*[36] persuasive.  Judge Boyle's *Air Vent* case features the same parties as in this case, but the facts are slightly different.  In that case, Powermax, DM (Asia), and Air Vent had the same relationship to each other as in this case.[37]  Powermax manufactured fan motors in China and shipped them to DM (Asia) and Air Vent in Texas.[38]  The difference in that case is that the fan at the heart of that dispute malfunctioned in California[39] whereas the fan in this case malfunctioned in Ohio.[40]  There, after assuming as true (as required on a motion-to-dismiss posture) that the fan at issue passed through Texas on its way to California, Judge Boyle held that Air Vent's breach-of-contract, breach-of-implied

---

[35] Doc. 1 at 4–10.

[36] No. 3:22-CV-0516, 2023 WL 4982255, at *3 (N.D. Tex. Aug. 3, 2023) (Boyle, J.).

[37] *Id.* at *1.

[38] *Id.*

[39] *Id.*

[40] Doc. 1 at 13.

warranty, statutory- and common-law indemnity, and negligence and strict-liability claims were related to Powermax's long-standing, contractually bound business relationship with a Texas forum resulting in $13 million of products being shipped to a Texas port and Texas business.[41]

Here, the fan malfunctioned in Ohio and not California. But in both cases, Air Vent has pled that the fan at issue was shipped to Texas.[42] As to the six claims listed in Judge Boyle's opinion, Powermax has pled nothing to call into question Judge Boyle's opinion, which again, concerns the same plaintiff, defendant, and middle-man companies, defective products, shipments, and contracts.

Although there is one difference between the related case and this one, this distinction makes no difference. In this case, Air Vent has included a seventh cause of action not pled in the related case: a claim for contribution under Ohio state law.[43]

---

[41] Doc. 87-1 at 46–48; *id.* at 69–147

[42] Doc. 1 at 3–4. The relatedness prong may ultimately come down to whether the fan in question passed through Texas. As a factual matter, the Court—admittedly—does not know if it did. But the Court need not know at this point in the dispute. In fact, the Fifth Circuit expressly instructs district courts to avoid making a fact-finding determination on personal jurisdiction matters at the motion-to-dismiss stage of litigation. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). In the Fifth Circuit's words:

> The plaintiff bears the burden of establishing jurisdiction, but need only present prima facie evidence. ***We must accept the plaintiff's uncontroverted allegations***, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation. In considering a motion to dismiss for lack of personal jurisdiction a district court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.

*Id.* (emphasis added) (cleaned up). Here, Air Vent pled as an allegation that the fan in question passed through Texas. Doc. 1 at 3–4. And it put forth evidence of 1.8 million Powermax fans shipping to Air Vent in Dallas. Powermax never cited to record evidence to rebut this allegation that the fan did not pass through Dallas, even with the assistance of court-ordered jurisdictional discovery. Thus, the Court "must accept" Air Vent's "uncontroverted allegation[]" as true. *Revell*, F.3d at 469.

[43] Doc. 1 at 9.

Air Vent alleges that it settled the Ohio state court case, which featured the same fan at issue in this case.[44]  Yet Air Vent alleges that it overpaid in settling and now seeks fees paid in relation to settling the suit.

The Court has specific jurisdiction over this claim too.[45]  As the Supreme Court notes, the most "common formulation" of the relatedness prong asks if the claim "arise[s] out of or relate[s] to the defendant's contacts with the forum."[46]  Notably, "[t]he first half of" this "standard asks about causation," *i.e.*, a but-for casual relationship.[47]  Here, but for the malfunctioning fan, which passed through Dallas, there would have not been a suit to settle, much less a claim for contribution.  So the Court has personal jurisdiction over this claim too.

## C. Fair and Reasonable

In the final prong of the specific-jurisdiction analysis, the Court must determine if haling Powermax into a Texas court would be "fair and reasonable."[48]  It is.  Air Vent is a Texas resident.[49]  A Texas resident "has a strong interest in having its injuries remedied in its home state," and Texas has a "manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by

---

[44] *Id.* at 3.

[45] "[I]f a plaintiff's claims relate to different forum contacts of the defendant, specific jurisdiction must be established for each claim." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006).

[46] *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021).

[47] *Id.*  Recently, the Supreme Court has expressly stated that a but-for casual relationship is the *lower bound* of the relatedness prong.  *See id.* (holding that the phrase "or relate to" "contemplates that some relationships will support jurisdiction without a casual showing").

[48] *Ainsworth*, 716 F.3d at 177.

[49] Doc. 1 at 1.

out-of-state actors."[50]  And Powermax's shipment of 1.8 million fan motors to Air Vent in Dallas makes clear that Powermax facing suit in Dallas is fair and reasonable.

## IV. Conclusion

Accordingly, the Court **DENIES** Powermax's motion.  (Doc. 32).

**IT IS SO ORDERED** this 24th day of January, 2024.

_____

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[50] *Burger King Corp.*, 471 U.S. at 473.

11